# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————
)
**SAVINGS BANK LIFE INSURANCE**           )
**COMPANY OF MASSACHUSETTS,**             )
                                          )          **Civil Action No.**
       **Plaintiff,**              )          **16-10535-FDS**
                                          )
       **v.**                     )
                                          )
**KATHLEEN FLEMING, PAUL FLEMING,**       )
**and MICHELLE FLEMING,**                 )
                                          )
       **Defendants.**             )
———————————————————————)

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

     This is an interpleader action concerning payment of the life insurance proceeds from a policy maintained by Paul Fleming ("the Insured") before his death.  He took out the policy in 1982.  At the time, he was married to Maureen Moroney.  When he and Maureen divorced in 1986, they executed a separation agreement in which he agreed to maintain his life insurance policy with their children as beneficiaries.  At the time, they had two children:  Paul and Michelle Fleming.  The Insured later married Kathleen (Fleming), and designated her as the beneficiary of his policy.  He passed away in 2015.  Paul and Michelle (the children), and Kathleen (the second wife) now contend that they are the rightful beneficiaries of the death benefit on the Insured's policy.

     The Savings Bank Life Insurance Company of Massachusetts ("SBLI"), the insurer, filed this interpleader action pursuant to 28 U.S.C. § 1335 in order to resolve the conflicting claims to

the death benefit.  All parties other than SBLI are proceeding *pro se*.  Because the Court finds

that it lacks subject-matter jurisdiction over this action under the domestic-relations exception to

diversity jurisdiction, the complaint will be dismissed.

I.      **Background**

    A.      **Factual Background**

Paul Fleming ("the Insured") and Maureen Moroney were married in 1973.  (Compl. ¶ 8).

During their marriage, they had two children:  Paul and Michelle Fleming.  (Compl. ¶ 9).  In

1982, the Insured applied for, and The Savings Bank Life Insurance Company of Massachusetts

("SBLI") issued, three life insurance policies, as follows:  Policy Number 023019921 (the "21

Policy") in the amount of $12,500; Policy Number 001073671 (the "71 Policy") in the amount of

$10,000; and Policy Number 002047393 (the "93 Policy") in the amount of $15,000.  (Compl. ¶

11).

In 1986, the Insured and Maureen divorced.  (Compl. ¶ 14).  They executed a marital

separation agreement in which, under the heading of "Alimony and Property Division," the

Insured agreed "to maintain the existing Savings Bank Life Insurance policy on his life in the

amount of $50,000 with the children as beneficiaries."  (Compl. ¶ 13; Pl. Ex. A).[1]  At the time,

all three insurance policies were in force, amounting to a total death benefit of $37,500.  (Compl.

---

[1] The complaint does not specify whether the separation agreement was incorporated into the final decree
of the Probate Court.  However, in her motion to intervene, Maureen Moroney states that the agreement was
"defined as having 'independent legal significance.'"  (Mot. to Intervene at 1).  Under Massachusetts law at the
relevant time, parties seeking a divorce on the ground of irretrievable breakdown of the marriage presented a
separation agreement to the court, and the court was required to then "make findings 'as to whether or not an
irretrievable breakdown of the marriage exist[ed] and whether or not the [separation] agreement . . . made proper
provisions for custody, for support and maintenance, for alimony and for the disposition of marital property.'"
*Stansel v. Stansel*, 385 Mass. 510, 512 (1982) (quoting then-current Mass. Gen. Laws ch. 208, § 1A) (second
alteration in original).  "If those findings [were] in the affirmative, the statute state[d] that 'the court shall approve
the agreement and [the agreement] shall have the full force and effect of an order of the court and shall be
incorporated and merged into said order, and by agreement of the parties it may also remain as an independent
contract."  *Id.* (quoting Mass. Gen. Laws. ch. 208, § 1A) (last alternation in original).  That is what appears to have
happened in this case.

¶ 15).

The Insured subsequently married Kathleen (Fleming).  In 1994, the 71 Policy and the 93 Policy lapsed and were terminated due to nonpayment of the premium.  (Compl. ¶ 17). Sometime prior to 2008, the Insured designated Kathleen as the beneficiary of the 21 Policy. (Compl. ¶ 19).  That policy states that "[a] beneficiary is any party named on our records to receive insurance proceeds when the Insured dies."  (Compl. ¶ 18; Pl. Ex. B).

The Insured died on May 25, 2015.  (Compl. ¶ 20).  At the time, the value of the 21 Policy was approximately $22,500.  (Compl. ¶ 22).  Kathleen was the designated beneficiary of the policy, but SBLI also had a copy of the separation agreement requiring the Insured to maintain his children, Paul and Michelle, as beneficiaries.  (Compl. ¶ 21).  In June 2015, SBLI received a death claim request form from Kathleen, seeking payment of the death benefit on the 21 Policy.  (Compl. ¶ 23).  In August 2015, SBLI received death claim request forms from Paul and Michelle, each seeking payment of 50% of the death benefit on the 21 Policy.  (Compl. ¶¶ 24–25).  In September 2015, SBLI wrote to Kathleen, Paul, and Michelle notifying them that it had received multiple competing claims for payment of the death benefit on the 21 Policy and that, if they could not resolve the dispute themselves, it would commence an interpleader action. (Compl. ¶ 26).  The claimants were unable to resolve their dispute.  (Compl. ¶ 31).

B.    **Procedural Background**

On March 16, 2016, SBLI filed this interpleader action pursuant to 28 U.S.C. § 1335, with Kathleen, Paul, and Michelle named as defendants.  That same day, SBLI also filed a motion for leave to deposit the disputed funds into the Court.  That motion was granted on April 5, 2016, and the funds were deposited on April 12, 2016.  On September 20, 2016, SBLI moved to be dismissed as a party and to enjoin defendants from instituting any separate action against it

for the death benefits on the 21 Policy.  Kathleen, proceeding *pro se*, filed an opposition to that motion on September 22, 2016; Paul and Michelle, also proceeding *pro se*, filed an opposition on September 30, 2016.[2]  The Court granted the motion and SBLI was dismissed from the action on October 30, 2016.

Kathleen has moved to dismiss the claims of Paul and Michelle for lack of standing. Maureen Moroney, proceeding *pro se*, has moved to intervene on behalf of her children.

## II.   <u>Analysis</u>

A federal court has an independent obligation to inquire, *sua sponte*, into its own subject-matter jurisdiction and to dismiss an action if it finds that such jurisdiction is lacking.  Fed. R. Civ. P. 12(h)(3); *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004).  Because the Court has concluded that it lacks subject-matter jurisdiction over this action, the action will be dismissed and the Court's prior order granting SBLI leave to deposit the disputed funds will be vacated.

SBLI contended that jurisdiction is proper pursuant to 28 U.S.C. § 1335.  Section 1335 provides for federal jurisdiction over interpleader actions where at least $500 is at issue and at least two claimants are of diverse citizenship as defined in § 1332.[3]  Jurisdiction under § 1335 is thus premised, at least in part, on the diversity jurisdiction of federal courts.  *See State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 530–31 (1967).

However, the Supreme Court has long held that the diversity jurisdiction of federal courts

---

[2] Kathleen filed a separate motion requesting that SBLI not be dismissed, but the Court treated that as an opposition to SBLI's motion.

[3] Section 1335 provides that "district courts shall have original jurisdiction of any civil action of interpleader or in the nature of an interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more . . . if (1) Two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property . . . ; and if (2) the plaintiff has deposited such money or property . . . into the registry of the court . . . ." 28 U.S.C. § 1335(a).

does not extend to cases involving divorce, alimony, or child custody.  *See Barber v. Barber*, 21 How. 582, 584 (1859) (holding that federal courts lack jurisdiction over suits for divorce or allowance of alimony).  Under this so-called "domestic-relations exception," federal courts lack jurisdiction, even when the parties are citizens of different states, over "cases involving the issuance of a divorce, alimony, or child custody decree."  *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). As the First Circuit recently reiterated, that exception includes cases concerning "the allocation of property incident to a divorce."  *Irish v. Irish*, 2016 WL 6678347, at *4 (1st Cir. Nov. 14, 2016) (internal quotation marks omitted).

In *Ankenbrandt*, the Supreme Court explained that the domestic-relations exception derives from the diversity-jurisdiction statute, 28 U.S.C. § 1332, and its historical antecedents. *See* 504 U.S. at 698–701.  The exception is also "supported by sound policy considerations":  the resources and expertise of state courts make them more appropriate forums for disputes related to divorce decrees and the division of marital property.  *Id.* at 703–04; *see also Irish*, 2016 WL 6678347 at *4 ("[S]tate courts are experts at dividing marital property, entering the necessary decrees, and handling the sensitive conflicts that follow.").

The dispute between the claimants in this action turns upon the validity and meaning of the 1986 separation agreement, which appears to have been incorporated into the Probate Court's judgment of divorce. Whether Kathleen or Paul and Michelle are entitled to the proceeds from the 21 Policy depends on whether the Insured had the right to change the beneficiaries of that policy.  That question, in turn, depends upon the interpretation of the separation agreement and Probate Court order.  This is not, therefore, a simple contract dispute.  It is a dispute over the proper distribution of marital property subsequent to a divorce decree.

It is true that the interpleader statute on its face appears to grant jurisdiction over this

action.  The statute relaxes the diversity requirements of § 1332:  the amount in controversy requirement is reduced from $75,000 to $500, and the usual requirement of complete diversity is modified such that only two claimants must be diverse from each other.  *See* 28 U.S.C. § 1332(a); 28 U.S.C. § 1335(a); *State Farm Fire & Cas. Co.*, 386 U.S. at 530–31 (explaining that, while § 1332 requires "complete diversity," § 1335 requires only "minimal diversity").[4] Congress enacted § 1335 to make it easier for stakeholders to bring federal interpleader actions to resolve disputes between multiple claimants.  *See State Farm Fire & Cas. Co.*, 386 U.S. at 530.

But § 1332, the diversity-jurisdiction statute, likewise on its face provides a grant of jurisdiction in domestic-relations cases between citizens of different states.  The Supreme Court has nonetheless made clear that there is a domestic-relations exception to that statute.  And there is no reason to think that Congress intended § 1335 to operate any differently.

First, there is nothing in the text of the statute to suggest an intent to provide jurisdiction over domestic-relations cases in the interpleader context.  Section 1335 creates two clearly articulated exceptions to § 1332—one for the amount in controversy and a second for the extent of diversity required—but otherwise relies on § 1332 itself to define its application.  *See* 28 U.S.C. § 1335(a)(1).  Second, the domestic-relations exception is premised, among other things, on the idea that state courts are uniquely suited to address such matters as divorce, alimony, and child support.  Federal courts do

---

[4] In relevant part, § 1332 provides that federal district courts "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."  28 U.S.C. § 1332(a).  It has long been held that to satisfy the diversity requirement, there must be "complete diversity"—that is, the citizenship of each plaintiff must be diverse from the citizenship of each defendant.  *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss*, 3 Cranch 267 (1806)).

not suddenly become better able to resolve disputes about marital property—nor do state courts become less so—simply because the issue arises in the context of an interpleader action.

Finally, a federal forum is not necessary to resolve this dispute. Rule 22 of the Massachusetts Rules of Civil Procedure, which is based on Fed. R. Civ. P. 22, enables insurers such as SBLI to file interpleader actions in state court in order to resolve disputes between multiple adverse claimants. *See* Mass. R. Civ. P. 22. Thus, there appears to be no barrier to SBLI bringing this interpleader action in a forum better suited to handle the nature of the disputed property at issue.

It is true, of course, that the Court accepted jurisdiction and permitted SBLI to pay the money into the Court. With the benefit of more careful analysis, it is now clear to the Court that the decision was erroneous. The question of the potential application of the domestic-relations exception was not raised by the parties (every party but SBLI is proceeding *pro se*). Nonetheless, the Court is required to inquire as to its own jurisdiction, and it now appears that the Court cannot grant or deny the requested relief without construing (and perhaps modifying) a state Probate Court decree. Accordingly, the Court will vacate its earlier order, return the money to SBLI, and dismiss this proceeding.

## III.   Conclusion

For the foregoing reasons, the complaint is DISMISSED for lack of subject-matter jurisdiction. The Court's earlier order granting plaintiff leave to deposit the disputed funds into the Court (Docket No. 8) is vacated. The clerk of court is directed to return the amount deposited with the Court in this matter to Savings Bank Life Insurance

Company of Massachusetts.

Defendant Kathleen Fleming's motion to dismiss (Docket No. 35) is DENIED as moot.  Maureen Moroney's motion to intervene (Docket No. 36) is DENIED as moot.

**So Ordered.**


                                                    /s/ F. Dennis Saylor IV
                                                    F. Dennis Saylor IV
Dated:  December 9, 2016                            United States District Judge